Peyton Lee, OSB #164224
Assistant Federal Public Defender
Email: peyton_lee@fd.org

Tatum Lohman
Certified Law Clerk
Email: tatum_lohman@fd.org

Katie Jahangiri
Certified Law Clerk
Email: Katie_Jahangiri@fd.org

101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone

Counsel for Mr. Alexander

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:26-cr-00043-YY |
| Plaintiff, | |
| | DEFENSE TRIAL MEMORANDUM |
| v. | |
| IAN ALEXANDER, | |
| Defendant. | |

Defendant, Ian Alexander, through counsel, Peyton Lee, and Certified Law Clerks,

Tatum Lohman and Katie Jahangiri, submits the following trial memorandum regarding the

relevant caselaw and legal issues that are anticipated to arise over the course of trial. The Court

has scheduled a pretrial conference for June 16, 2026. A Court trial is scheduled to commence on

June 29, 2026. Mr. Alexander is out of custody.

Page 1    Defense Trial Memorandum

**ALLEGATIONS**

Mr. Alexander is charged by way of Information with two counts of Failing to Comply with Lawful Direction of Federal Police Officers in violation of 41 C.F.R. § 102-74.385. The charges allege that on or about June 17, 2025 (Count 1) and on or about July 16, 2025 (Count 2), Mr. Alexander "did willfully enter in and on federal property, to wit: the grounds of the Immigration and Customs Enforcement Building, and fail to comply with the lawful direction of federal police officers and other authorized individuals." Information at 1-2.

**BACKGROUND**

Mr. Alexander's charges arise from protests at the ICE facility occurring in June and July of 2025. On June 17, 2025, Mr. Alexander took part in protests against the government's current use of the ICE building located in Portland. The evidence will show that Mr. Alexander was one of at least 30 protesters on that night, and that he was one of at least nine protesters arrested.[1] Surveillance footage will show that officers arrested protesters seemingly at random, while escorting other protesters off property despite those protesters being engaged in identical conduct to those arrested. Mr. Alexander maintains that he did not knowingly fail to comply with a lawful direction.

On July 16, Mr. Alexander was arrested alone despite being one of several other protesters engaging in similar conduct. The evidence will show that Mr. Alexander was passionately protesting the government and was detained after a forceful, targeted arrest by

---

[1] Proposed Defense exhibits 101-104 video exhibits which will be filed with the Court for consideration along with this memorandum.

Page 2    Defense Trial Memorandum

officers. Mr. Alexander again maintains that he was not given a lawful direction which he subsequently knowingly failed to follow.

**ELEMENTS OF THE OFENSE**

To prove a violation of 41 C.F.R. § 102.74.385,[2] the government must show: (1) the incident occurred on federal property; (2) Mr. Alexander failed to comply with a lawful direction of federal police officers; and (3) Mr. Alexander acted unlawfully, willfully, and knowingly. 41 C.F.R. § 102.74.385; *United States v. Kittel*, No. 6:19-cr-00240-MK, 2021 WL 3823185, at *7 (D. Or. Aug. 26, 2021).

## I.    Federal Property

The larger regulatory scheme of 41 C.F.R. § 102-74.385 specifically provides rules regarding conduct on federal property. *See* 41 C.F.R. §102-74.365 ("The rules in this subpart apply to all property under the authority of GSA and to all persons entering in or on such property."). The authorizing statute itself allows for regulations "necessary for the protection and administration of *property owned or occupied by the Federal Government*." 40 U.S.C. § 1315 (emphasis added). As such, the government must present evidence to establish beyond a reasonable doubt that the violations did indeed occur on federal property. *See In re Winship*, 497 U.S. 358, 464 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

---

[2] This regulation is no longer in force, although an analogous regulation can be found under Title 6 of the Code of Federal Regulations.

**II.    Lawful Directive**

A "lawful direction" must contain "all, or many," of the elements described in *United States v. Huizar* to comport with due process: (1) federal officers must give an "unambiguous command," often multiple times; (2) officers must ensure the command was understood; (3) officers must communicate that failure to comply with the order would result in arrest; and (4) officers must provide a "reasonable opportunity to comply" to those receiving the directive. *United States v. Huizar*, 762 Fed.Appx. 391, 392 (9th Cir. 2019) (vacating a conviction under 41 C.F.R. § 102.74.385 where the defendant was told, "it's time for you to leave," before engaging in a verbal confrontation with the officer escorting him out of a federal building).

The requirement for actual notice is enshrined in the underlying statutory authority for this regulation, that is 40 U.S.C. § 1315, which requires that regulations be "posted and remain posted in a conspicuous place on the protected property." Such doctrinal requirements for conspicuous posting are translated and captured in the caselaw requirement that any lawful order made under the 41 C.F.R. § 102.74.385 provide the same kind of "actual notice," as defined by *Huizar*.  40 U.S.C. § 1315; *United States v. Bichsel*, 395 F.3d 1053, 1056 (9th Cir. 2005) ("The actual notice exception fulfills the rationale behind the conspicuous posting requirement because actual notice is the best notice."); *see also Huizar*, 762 Fed.Appx. at 392 ("Indeed, basic principles of due process likely required that any 'lawful direction' contain all, or many, of the [qualities listed above].").

At least two courts in this District have applied these factors in determining whether a direction was lawful and provided constitutionally sufficient notice to defendants. In *United States v. Kittel*, the court deemed the directive at issue constitutionally sufficient because two officers gave the defendant—the driver of a vehicle—multiple orders to stay in the parking lot so

Page 4    Defense Trial Memorandum

they could issue a parking citation, the defendant/driver confirmed he understood why he was being detained through words and conduct, and he was informed that leaving the parking lot would constitute a crime. *Kittel*, 2021 WL 3823185, at *9.

In *United States v. West*, the court determined the directive at issue to be sufficient because there, the defendant was "unambiguously and repeatedly informed that recording was prohibited in the [Social Security] Hearing Office and directed to regulations supporting that rule," in the form of specific posted signs, and rather than taking the reasonable opportunity to comply, he chose to reenter the Hearing Office to continue recording. *United States v. West*, No. 3:25-cr-001880-IM-1, 2025 WL 2416975, at *5 (D. Or. Aug. 21, 2025). In both cases, officers gave specific verbal commands directly to the defendant, engaged in conversation with the person regarding the specific nature of the order and the consequences, and provided ample opportunity to comply before issuing citations under § 102.74.385. In Mr. West's case, additional further directions were provided in the form of the posted regulation.

## III.    Unlawfully, Willfully, and Knowingly

In order to prove a violation under § 102.74.385, the government must prove beyond a reasonable doubt that a specific lawful order was given to Mr. Alexander, and that he unlawfully, willfully, and knowingly disobeyed it. *See United States v. Moriello*, 980 F.3d 924, 930-31 (4th Cir. 2020). If the government establishes actual notice to Mr. Alexander of a specific directive, they must then show that Mr. Alexander did, in fact, understand and willfully disobey the lawful directive. As provided in the Ninth Circuit Model Criminal Jury Instructions, "[a]n act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident." Ninth Circuit Model Criminal Jury Instructions § 4.8 (2022). Stated differently, to be

Page 5    Defense Trial Memorandum

found guilty, the government must prove beyond a reasonable doubt that Mr. Alexander *knew* he was not complying with a lawful directive and freely chose to do so.

### FIRST AMENDMENT & VAGUENESS

In addition to determining whether the Government has met the elements of the offense at the close of trial, the Court must also determine whether this application of 41 C.F.R. § 102-74.385 would impermissibly restrict Mr. Alexander's First Amendment rights in this case or is otherwise void for vagueness as applied to Mr. Alexander, as previously raised in ECF 25.[3] As the Court explained in denying the previously filed Motion to Dismiss, this determination will require the Court to make factual findings. ECF 44 at 3, 6. Mr. Alexander maintains that this Court should dismiss the charges on First Amendment grounds and vagueness grounds as outlined in ECF 25, and alternatively, that the Court should find Mr. Alexander not guilty as the "lawful directive" element cannot be met with an unconstitutional directive.

The basic tenant of the First Amendment is that the government may not prohibit or punish constitutionally protected speech. As such, this Court must decide whether Mr. Alexander was engaged in constitutionally protected First Amendment activity leading up to his arrests, what forum Mr. Alexander was in, and whether government restrictions on his activity were justified. Additionally, the Court must determine whether the statute is unconstitutionally vague as applied to Mr. Alexander.

---

[3] Consistent with the Court's discussion in ECF 44, the defendant has used the ECF number for the motion to dismiss from the first case, No. 3:25-PO-00391-YY. *See* ECF 44, at 2 n.1.

Page 6    Defense Trial Memorandum

## I.     Constitutionally Protected First Amendment Activity and Governmental Restriction Thereof

First, the Court should find Mr. Alexander to have been engaging in speech or expressive conduct that implicates the First Amendment. Speaking aloud, recording a video, and protesting constitute either pure speech or purely expressive conduct. *See United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment."); *United States v. Stevens*, 559 U.S. 460, 469 (2010) (striking down a law that prohibited the creation, sale, or possession of specific video content as an unconstitutional content-based restriction); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (describing purely expressive conduct).

The Court should also find that the government is restricting his speech. The Court should determine that an act by the government regulated, stopped, or prohibited protected speech through blanket rules or through discrete actions. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (explaining the First Amendment's prohibition on laws that abridge freedom of speech); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989) (explaining that specific applications of otherwise valid laws may be unconstitutional rendering that specific application unacceptable). Once the Court determines First Amendment activity was regulated or restricted, it must decide whether that restriction comports with constitutional requirements.

## II.     Unconstitutional Restriction of First Amendment Activity

To determine which constitutional standard the Court must apply in considering the government's justifications offered for limiting or excluding speech, it must first distinguish the nature of the forum in which the speech occurred: public, designated public, or nonpublic.

Page 7    Defense Trial Memorandum

*Cornelius v. NAACP Leg. Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). A public forum is a place "which by long tradition or by government fiat have been devoted to assembly and debate," such as streets, parks, sidewalks, and certain areas generally open to the public. *Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 45 (1983). A designated public forum is "public property which the state has opened for use by the public as a place for expressive activity." *Id.* A nonpublic forum is public property "not by tradition or designation a forum for public communication." *Id.* at 46.

There are several factors that courts may consider in identifying which category a certain forum falls into. For one, courts should consider whether the property is generally open to the public. Although this factor is important, it may not be dispositive on its own. *Grace*, 461 U.S. at 177. Courts must also consider descriptive factors related to the property—including policies and practices related to public access to the property, the nature and characteristics of the venue, the historical use of the forum, and whether anything distinguishes the property from other areas which would otherwise be clear public fora. *See id.* at 179-80; *United States v. Kokinda*, 497 U.S. 720, 727 (1990); *Perry Educ. Ass'n*, 460 U.S. at 45. A policy declaring a forum nonpublic does not render that forum nonpublic if "in practice, it is not enforced or if exceptions are haphazardly permitted." *See Hopper v. City of Pasco*, 241 F.3d 1067, 1076 (9th Cir. 2001). To demonstrate, the Supreme Court held that a public school's interschool mail system is a nonpublic forum because it exists only to provide school-related information to teachers and is not generally open to the public. *Perry Educ. Ass'n*, 460 U.S. at 47. By contrast, the Court held that the sidewalks surrounding the Supreme Court grounds are public fora because although they are technically not public Washington, D.C. sidewalks, there is "no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as

Page 8    Defense Trial Memorandum

the perimeter of the Court grounds that they have entered some special type of enclave." *Grace*, 461 U.S. at 179-80.

There are different standards courts must apply when assessing government justification of restrictions on speech depending on the forum. If the government attempts to exclude speech based on its content in a public forum, then the government "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n*, 460 U.S. at 45. The government may also impose reasonable time, place, and manner regulations on speech which are content neutral as long as the regulation is "narrowly tailored to serve a significant government interest, and leave[s] open amply alternative channels of communication." *Id.* If the speech occurred on a designated public property, the same standards as traditional public fora apply. *Id.* at 46.

Even in a nonpublic forum, the government may only impose *reasonable* time, place, and manner regulations, and may "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable *and not* an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* (emphasis added).

The court must find government action unconstitutional in a nonpublic forum if the government partakes in viewpoint discrimination. *Cornelius*, 473 U.S. at 806 (explaining that in a nonpublic forum, the government may not draw distinctions based on viewpoint: "the government violates the First Amendment when it denies access to a speaker solely to suppress the point of the view he espouses on an otherwise includible subject"). It must also find government action unconstitutional in a nonpublic forum if the restriction on speech is not "reasonable in light of the purpose served by the forum." *Id.* In *Minnesota Voters Alliance v. Mansky*, the Supreme Court concluded that although a polling place is a nonpublic forum and the

Page 9    Defense Trial Memorandum

government could demonstrate that it had a permissible objective in prohibiting certain types of apparel while in the polling, the government's restriction was still unreasonable and unconstitutional under the First Amendment. 585 U.S. 1, 13-16 (2018). There, Minnesota had banned "political" apparel and accessories in polling places, and the Court found this term— "political"—coupled with the "haphazard interpretations" of the term employed by the state "to fail even this forgiving test." *Id.* at 16-17. Thus, although restrictions on speech may not need to be "narrowly tailored", the government still "must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *Id.* at 16.

After conducting the above First Amendment analysis, the Court should dismiss the charges or find Mr. Alexander not guilty because the government unconstitutionally applied 41 C.F.R. § 102-74.385 to restrict Mr. Alexander's protected speech and any requirement for a "lawful directive" cannot be met through an unconstitutional directive.

## III.    Vagueness

The regulation as applied to Mr. Alexander is unconstitutionally vague. A criminal statute is unconstitutionally vague "if it fails to put a defendant on notice that his conduct was criminal." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (internal quotation marks and citation omitted). Indeed, when criminal sanctions are possible, "the requirement for clarity is enhanced." *Id.* (citation omitted). The question this Court must consider is whether this 41 C.F.R. § 102-74.385 "provided adequate notice to [Mr. Alexander] that his particular conduct was proscribed." *Id.*; *see also United States v. Jimenez*, 191 F. Supp. 3d 1038, 1041 (N.D. Cal. June 6, 2016) (explaining that when a defendant raises an as-applied vagueness challenge, the government must show that the defendant had "fair notice that his particular conduct was proscribed" and that the government's "action against him was not arbitrary").

Page 10    Defense Trial Memorandum

Thus, the government must demonstrate that it gave a specific, clear directive, putting Mr. Alexander on notice that failure to comply with that specific directive would result in citation. This particularized notice is even more important when a regulation, such as 41 C.F.R. § 102-74.385, purports to give law enforcement broad authority and discretion. The Court must ensure the regulation is not arbitrarily and unjustly applied by requiring the government to overcome Mr. Alexander's assertion that he did not receive adequate notice that his alleged conduct would result in criminal sanction.

**CONCLUSION**

The defense offers the foregoing information to aid the Court's consideration at trial regarding whether the government has proven the elements beyond reasonable doubt and whether the application of this statute to Mr. Alexander is unconstitutionally vague or impermissibly infringes on his First Amendment rights.

Dated: June 1, 2026.

*/s/ Peyton Lee*
Peyton Lee, OSB #164224

*/s/ Tatum Lohman*
Tatum Lohman, Certified Law Clerk

*/s/ Katie Jahangiri*
Katie Jahangiri, Certified Law Clerk