Peyton Lee, OSB #164224
Assistant Federal Public Defender
Email: peyton_lee@fd.org

Tatum Lohman
Certified Law Clerk
Email: tatum_lohman@fd.org

Katie Jahangiri
Certified Law Clerk
Email: Katie_Jahangiri@fd.org

101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123 Telephone

Counsel for Mr. Alexander

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:26-cr-00043-YY |
| Plaintiff, | |
| | DEFENSE MOTIONS IN LIMINE |
| v. | |
| IAN ALEXANDER, | |
| Defendant. | |

Defendant, Ian Alexander, through counsel, Peyton Lee, and Certified Law Clerks Tatum Lohman and Katie Jahangiri, respectfully submit the following motions in limine, as further outlined below: first, that the Court order the government to elect which order they intend to rely on to prove a lawful order was given to Mr. Alexander for Counts 1 and 2; second, that the Court should preclude testimony based on hearsay, or for which agents lack personal knowledge, or

Page 1 Defense Motions in Limine

which fails to comply with the best evidence rule, especially as it pertains to proving the federal

property element of the charged offenses; and finally, the defense offers objections to a number

of the anticipated exhibits that the government proposes introducing at trial, as outlined below.

**I.      Motion to Elect: The Government Should Elect Which Order It Is Relying on to Prove a Lawful Order Was Given for Counts 1 And 2.**

Mr. Alexander has a fundamental due process right to present a defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). To properly exercise this right, Mr. Alexander moves the Court to require the Government to elect what constitutes the lawful order for Count 1 and Count 2.

The Government has provided Mr. Alexander with a list of ten witnesses, a recording of an LRAD announcement from an unspecified date and time (Proposed Gov. Ex. 3), dispatch logs which show four LRAD announcements at various times on June 17, 2025, seven purported announcements at different times on July 16, 2025 (Proposed Gov. Ex. 5, 11), and a photograph of an undated announcement template with generic scripts for six different types of LRAD announcements that could be made (Proposed Gov. Ex. 4). The Government has not provided a specific video or audio file for the exact order it intends to rely on for Count 1 and 2, nor specified who gave the order which Mr. Alexander is alleged to have failed to comply with.

Mr. Alexander cannot exercise his fundamental right to present a defense without understanding which particular order he is charged with violating.

**II.     Requesting Disclosure of Personnel Files of Testifying Federal Agents**

Mr. Alexander requests that the government be ordered to provide disclosures of the personnel files of testifying government agents pursuant to *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991). Further, Mr. Alexander requests that counsel for the government explicitly state on the record that they have personally requested and reviewed the personnel files prior to

making such disclosures, instead of relying on the law enforcement agencies themselves to provide relevant and discoverable information.

Due process requires that disclosure of exculpatory and impeachment evidence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See, e.g. United States v. Manning*, 56 F.3d 1188, 1198 (9th Cir. 1995) (disclosures should be made by government when still of substantial value to the accused). Concerning required disclosures, the prosecution may not suppress exculpatory evidence that is material to the issue of guilt or punishment, including information in the personal files of law enforcement officers. *United States v. Cadet*, 727 F.2d 1453, 1467 (9th Cir. 1984) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). When the defense generally requests exculpatory evidence, "the test for materiality is whether the suppressed evidence 'creates a reasonable doubt that did not otherwise exist.'" *Cadet*, 727 F.2d at 1467 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

In *Henthorn*, the Ninth Circuit confirmed that a defendant is not required to make any prima facie showing prior to obtaining the appropriate disclosures, stating: "[t]he government is incorrect in its assertion that it is the defendant's burden to make an initial showing of materiality. The obligation to examine the files arises by virtue of making of a demand for their production." *Henthorn*, 931 F.2d at 31. The Ninth Circuit has recognized that a prosecutor should not delegate the responsibility of reviewing files for Brady material to a non-attorney investigator. *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)). The court found "that the better practice is for the prosecutor herself to review [the] materials." *Id*. at 905. For these reasons, the Court should require the government to disclose the personnel files of testifying agent witnesses.

Page 3 Defense Motions in Limine

**III.    404(b) Evidence: The Court Should Preclude Use of Evidence from June 17, 2025 to Show That Mr. Alexander Acted in Conformity Therewith on July 16, 2025.**

Under Fed. R. Evid. 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Additionally, where the government intends to introduce evidence of other crimes, wrongs, or acts in a criminal case for a non-propensity purpose, the prosecutor must provide "reasonable notice." FRE 404(b)(2)(3). Here, the Government has not provided notice that it intends to use any evidence from Count 1, or other evidence, under 404(b)(2). Mr. Alexander would request appropriate notice if the Government intends to use evidence under 404(b) and would reserve the right to raise objections to such use.

**IV.    Federal Property Evidence: The Court Should Exclude Testimony from Special Agent Coring or Any FPS Agent Regarding the Lease Agreement of 4310 S Macadam Ave. to Substantively Prove the Required Element of Federal Property.**

Counts 1 and 2 under 41 C.F.R. § 102-74.385 require the Government to prove that the conduct at issue took place on federal property. This requires that the Government prove that on both June 17, 2025, and July 16, 2025, the property at 4310 S. Macadam Avenue was lawfully "owned, leased, or occupied" by the federal government. *Moore v. United States*, 254 F. App'x 603, 603 (9th Cir. 2007) (citing 20 U.S.C. § 107e(3) and 34 C.F.R. § 395.1(g)). To the extent the Government intends to rely on a lease agreement between the City of Portland and the GSA, the Government must prove that on both June 17, 2025, and July 16, 2025, a valid contract was in place.

### A.    Hearsay Under Fed. R. Evid. 802

Because no FPS Agents on the Government's witness list were themselves parties to any lease agreement, their knowledge of whether the property located at 4310 S. Macadam Avenue

Page 4 Defense Motions in Limine

was federal property on June 17, 2025, and July 16, 2025, is based on what they have learned from someone else. This constitutes hearsay. If the Government alleges statements regarding the lease are being offered for the non-hearsay purpose of effect on the agents' actions, the Government cannot then offer the testimony as substantive evidence for the required element of federal property for both Count 1 and Count 2, because by definition the statements would not be offered for the truth of what the statement asserts.

### B.      Lack of Personal Knowledge Under Fed. R. Evid. 602

Under Fed. R. Evid. 602, with the exception of expert testimony under FRE 703, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602 further prevents a witness from testifying to a hearsay statement, because he or she has no personal knowledge of it. *See* Fed. R. Evid. 602, Notes of Advisory Committee on Proposed Rules.

The Government has not at this time indicated that they intend to call any witness who has personal knowledge that the property located at 4310 S. Macadam Avenue was federal property on June 17, 2025, and July 16, 2025. Thus, the possible available testimony about whether the property is federal property is not based on personal knowledge for any of the anticipated witnesses. Mr. Alexander anticipates that none of the testifying witnesses on Government's witness list were parties to the lease agreement, nor have reviewed the lease agreement, and importantly, even if had reviewed them—understood the terms of the lease agreement such that they would have personal knowledge as to whether or not the agreement was legally valid on June 17, 2025, and July 16, 2025. The Court should exclude testimony about the lease agreement from witnesses who do not have personal knowledge as to its contents, terms, and validity on the dates in question to prove it occurred on federal property.

Page 5 Defense Motions in Limine

### C.    Best Evidence Rule

Based on the Exhibit List provided by the Government on May 26, 2026, the Government does not intend to offer the actual lease agreement for the property located at 4310 S. Macadam Avenue into evidence. Instead, Mr. Alexander believes that the Government intends to offer testimony as to the contents of the agreement in lieu of the original document, which violates the Best Evidence Rule. Fed. R. Evid. 1002. There is no reason to believe the original lease agreement was destroyed or no longer exists.  Mr. Alexander does not stipulate that the property located at 4310 S. Macadam Ave. was federal property on either June 17, 2025, or July 16, 2025. It is the Government's burden to prove each and every element of the crimes charged beyond a reasonable doubt, including that it occurred on federal property. The Court should hold the Government to its burden and exclude testimony to prove this necessary element that falls short of evidentiary standards.

## V.    Exhibit Objections

### A.    Exhibit 3, LRAD Recording: The Court Should Exclude the Government's Pre-Marked Exhibit 3 (Cell Phone Recording of an LRAD Announcement) Because it Violates the Best Evidence Rule and Mr. Alexander's Sixth Amendment Right of Confrontation.

#### 1.    The Best Evidence Rule

Under Fed. R. Evid. 1002 (the "best evidence rule"), "[a]n original…recording…is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. A duplicate in lieu of the original may be admissible "to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. *See also* J. Moore

Page 6 Defense Motions in Limine

Fed. Prac. P 1003.02 (2nd ed. 1976) (noting that the lack of "trustworthiness of the duplicate," may serve as a basis for denying admission of the duplicate).

The Government bears the burden to prove beyond a reasonable doubt that a lawful order was given to Mr. Alexander on June 17, 2026, and July 16, 2026. On May 20, 2026, the Government discovered a cell phone audio recording purported to be an LRAD announcement, and a representative of the announcement made on the dates at issue in this case. There are a number of issues with the Government's recording.

First, the audio file is a cell phone recording of an LRAD announcement, not the original audio file of the announcement played on either June 17, 2026, or July 16, 2026. Special Agent Micah Coring writes in a January 30, 2026, Memo that the audio recording "is a recording of the LRAD message used during operations at the Portland ICE facility in June and July 2025." *See* Attachment 1. However, Special Agent Coring was not present at the Portland ICE facility on July 16, 2026, and does not have first-hand knowledge of the recording played on that date and time in question. Additionally, this audio file cannot be a recording of both dates, nor is it the original file which Special Agent Coring seems to be indicating would have been played over the LRAD system. Based on the information we have, Mr. Alexander presumes that this exhibit is a cell phone recording. Furthermore, to the extent that this is the same exhibit that was introduced in *United States v. Pearl*, through Special Agent Coring, he has testified that this recording was taken on "the day that we're talking about, [June] 21st." *See United States v. Pearl*, 3:25-cr-00280-SI, Transcript ECF 37 at 24–25.

Additionally, the Government has failed to demonstrate that original recordings of the LRAD Announcements made on June 17, 2025, and July 16, 2025, were either destroyed or do not exist within their possession. Finally, the meta-data currently available to the defense for the

Page 7 Defense Motions in Limine

recording indicates that it was created in May of 2026. At a minimum, the recording does not appear to be of the actual LRAD announcements as played on June 17, 2026, nor July 16, 2026. There is at present no objective evidence that Mr. Alexander can confront to examine the veracity of the recording being used by the Government to prove that a lawful order was given on the dates for which he is charged; there is no direct audio recording of the announcements made on June 16, 2026, nor July 17, 2026, nor of any order given on that day that has been provided by the Government.

The Court should exclude Government's Proposed Exhibit 3 (Cell Phone Recording of an LRAD Announcement) because it is not the original LRAD recording for either of the relevant dates, and it cannot be adequately authenticated as a duplicate of the relevant recordings.

### 2.      The Sixth Amendment Right to Confrontation

The Sixth Amendment's Confrontation Clause "guarantees a criminal defendant the right to confront the witnesses against him." *Smith v. Arizona*, 602 U.S. 779, 783 (2024). In *Crawford v. Washington,* the Supreme Court explained that the right of confrontation "commands, not that the evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. 36, 61 (2004). In so doing, the Clause prohibits "testimonial hearsay," meaning out-of-court statements, offered for their truth, which "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009), quoting *Crawford*, 541 U.S. at 52 (2004). Where an "expert for the prosecution conveys an out-of-court statement in support of his opinion, and the statement supports that opinion only if true, then the statement has been offered for the truth of what it asserts." *Smith*, 602 U.S. at 795.

Page 8 Defense Motions in Limine

Here, the cell phone recording is hearsay because the content of the recording is an out of court statements, made by a declarant, with its only relevance to the charge at issue being used for the truth—to prove a lawful order. Most importantly, the recording is *testimonial* hearsay because it was made for the purposes of trial. See *United States v. Pearl*, 3:25-cr-00280-SI, Transcript, 25 at 5–8 (Special Agent Coring: "[W]e had some visiting agents that were helping from out of town, and I sent one of them outside with a cell phone to record the audio, because I didn't have a recording of it for exhibits."). Because the "visiting agents" prepared the recording which contains testimonial hearsay, Mr. Alexander has a right to examine the agents who made the recording. Because the cell phone recording is testimonial hearsay, Mr. Alexander's right of confrontation commands that the reliability of the evidence be tested under the crucible of cross examination.

Mr. Alexander cannot do that in this case because the Government has not produced the names of, nor does it intend to call, the "visiting agents" who recorded the audio on their cell phone. This means that Mr. Alexander cannot cross-examine the "visiting agents" on how and when the recording was made, under what conditions and time of day it was recorded, how and where it was stored, whether it has been edited, or who may have had access to it from the time it was recorded until trial. *See Smith*, 602 U.S. at 791 (the Supreme Court noting that through Longoni, who prepared for trial "by reviewing [the analyst's] report and notes," offering an "independent opinion" of the identity of the drugs," meant that the state was using Longoni as a "substitute expert" when the "real witness against [the defendant] was [the analyst].").

Page 9 Defense Motions in Limine

**B.** **Exhibit 11, July 15/16 "log" & Accompanying Memorandum and Testimony from Special Agent Micah Coring: It Constitutes Hearsay and Violates Mr. Alexander's Sixth Amendment Right of Confrontation.**

### 1. Hearsay Under Fed. R. Evid. 802

Under Fed. R. Evid. 802, hearsay is not admissible unless a federal statute, the rules of evidence, or other rules prescribed by the Supreme Court allow it. Fed. R. Evid. 802. The Government seeks to introduce testimony from Special Agent Micah Coring regarding Dispatch Logs that Special Agent Coring "requested and received . . . from the Denver Mega Center (DMC)[.]" *See* Attachment 2, Gov. Memorandum of Record (May 26, 2026). These Dispatch Logs were not assembled by Special Agent Coring. It is unclear who the actual dispatcher was who assembled these logs. The logs contain hearsay because they contain statements made out of court, presumably by someone at the DMC, and the Government intends to use them to prove the truth of the matter asserted—that is the times and dates of when LRAD Announcements were allegedly made. To overcome the rule against hearsay, the Government would need to prove that the testimony about the Dispatch Logs from DMC falls within an exception to the hearsay rule.

Attachment 3 (Proposed Gov. Ex. 3 and 11) purports to show the Dispatch Logs from June 17, 2025, and July 16, 2025, which are inadmissible because the physical documents contain at least four layers of hearsay. Exhibit 11 purports to show statements written (layer 1) about conversations between unidentified dispatchers (layer 2) and FPS agents in Portland (layer 3). None of which appear to include Special Agent Coring, who the Government intends to admit this exhibit through (layer 4). The Government does not presently intend to call anyone from the DMC who authored the Dispatch Logs. To overcome the rule against hearsay, the Government would need to prove that each layer of hearsay within the Dispatch Logs in Exhibit 11 from DMC falls within an exception to the hearsay rule.

Page 10 Defense Motions in Limine

The Court should exclude the log, and any testimony surrounding the exhibit, as inadmissible hearsay.

### 2.    The Sixth Amendment Right to Confrontation

Even if the Government could establish that both Exhibit 11 and testimony about Exhibit 11 fall within a Hearsay exception, the Court should still exclude both on constitutional grounds. Special Agent Coring did not gather or assemble these records. In fact, the Government does not intend to bring anyone from the DMC who did gather and assemble these records to testify as to the policies, practices, or methods of collecting, storing, analyzing, and gathering the data which the Government seeks to introduce for its truth of when LRAD Announcements were given on both dates at issue here. Instead, the Government seeks to make Special Agent Coring "the mouthpiece" for the DMC. *See Smith*, 602 U.S. at 800 ("the State used Longoni to relay what Rast wrote down about how she identified seized substances…thus effectively [becoming] Rast's mouthpiece.")

## VI.    Additional Motions in Limine

The defense reserves the right to file supplemental motions in limine to address any outstanding issues. In addition, defense may file supplemental motions in limine should defense oppose other evidence the government seeks to introduce during its case in chief.

Dated: June 1, 2026.

/s/ Peyton Lee
Peyton Lee, OSB #164224

/s/ Tatum Lohman
Tatum Lohman, Certified Law Clerk

/s/ Katie Jahangiri
Katie Jahangiri, Certified Law Clerk