**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**CAMERON PERLA, OSB #241820**
Assistant United States Attorney
Cameron.Perla@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:26-cr-00043-YY |
| **v.** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE** |
| **IAN MALCOM ALEXANDER,** | |
| **Defendant.** | |

The United States of America, through Cameron Perla, Assistant United States Attorney

for the District of Oregon, hereby responds to Defendant's motion in limine. ECF 9. The United

States requests that the Court deny Defendant's motion in limine and permit the United States to

allow its submitted evidence, testimony, and exhibits to be introduced at trial.

**I.      The Court Should Not Order the United States to Elect Which Specific Order Defendant Failed To Comply.**

Defendant is charged with two counts of "Failing to Comply with a Lawful Order" in

violation of Title 40, United States Code, Section 1315, and Title 41, Code of Federal

Regulations, Section 102-74.385 ("Failure to Comply"). ECF 1. Failure to Comply requires that

"[p]ersons in and on property must at all times comply with official signs of a prohibitory,

**Government's Response** **Page 1**

regulatory, or directory nature and with the *lawful direction* of Federal police officers and other authorized individuals." (Emphasis added). To understand what is meant by the "order" or "lawful direction" that Defendant failed to comply with, this Court has previously summarized:

> The Ninth Circuit has explained that a "lawful direction" typically has several characteristics: (1) "officers gave defendants an unambiguous command (often multiple times)"; (2) "officers ensured that the command was understood"; (3) "officers communicated that defendants would be arrested for failing to comply with the order"; and (4) "defendants were given a reasonable opportunity to comply." *United States v. West*, No. 3:25-CR-00118-IM-1, 2025 WL 2416975, at *4 (D. Or. Aug. 21, 2025). (Citing *United States v. Huizar*, 762 F. App'x 391, 392 (9th Cir. 2019) (mem.). stating "[t]he Ninth Circuit has explained that "basic principles of due process" require "all, or many, of these qualities.").

*Huizar*, while not a published decision, is still instructive. In *Huizar*, the Nineth Circuit found that a security guard telling a disgruntled individual "it's time to leave" once in a Social Security building was insufficient to establish a lawful direction had been given. The Court then cited the factors reiterated in the *West* case cited prior.

Here, unlike Huizar, the lawful direction given was that Defendant was notified to leave federal property or that he would be subject to arrest and failed to heed those notifications on June 17, 2026, and July 16, 2026. This lawful direction was communicated to Defendant through a Long-Range Acoustic Device ("LRAD") audio device as well as verbally and gesturally by federal agents on both dates. Without declaring verbatim what the order was, the United States anticipates that the evidence at trial will establish that Defendant, on both dates in question, was ordered to leave federal property and understood that order as delivered.

Without adjudicating the facts via this motion, the United States intends to present evidence to demonstrate the lawful direction was given. However, the exact verbatim statement may not be ascertained but the elements of a lawful direction will be demonstrated. Therefore, the Court should not grant the motion to elect and allow the United States to present its evidence.

**Government's Response**                                                                 **Page 2**

**II.** **The Court Should Limit The Disclosure Of Personnel Files Of Federal Agents To Only Pertinent Material Information Related To The Pending Charges Against Defendant And Not Require DOJ Attorneys To Testify to Validate Entire Personnel Files.**

In a criminal trial, the United States "has an obligation to turn over only material, exculpatory or otherwise helpful to the defense, that it has in its possession. *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019). The United States will fully comply with all required disclosure requirements under the federal constitution and applicable case law. The United States has already begun its Henthorne inquiries and will comply with all of its disclosure obligations. Regarding the personnel files of officers involved in the underlying incident, "[personnel] files need not be furnished to the defendant or the court unless they contain information that is or may be material to the defendant's case." *United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1991).

Defendants request to obtain all personnel files of all federal agents involved in the incident and that the undersigned attorneys declare that they have read and vouched for their validity is an extreme departure from complying with required disclosures. Such a request would be highly unproportional and cause a significant drain on resources better suited to other endeavors. Defendant has cited no caselaw and the United States was not able to find support for such a position either. Finally, the information contained in the personnel files would also be non-material. *See United States v. Jimenez-Peralta*, No. 23-1290, 2024 WL 4304895, at *3 (9th Cir. Sept. 26, 2024) finding that there was no abuse of discretion when a district judge denied a disclosure to defense when the personnel file contained non-material information. Therefore, the Court should deny Defendant's request to compel The United States to release and testify to the contents of federal agents' personnel files.

///

**III.** **The Court Should Permit Evidence Of Defendant's Prior Presence At The ICE Facility For Non-Conformity Reasons To Establish Notice And Knowledge That The Federal Property Was Not Open To The Public And Trespassing Was Subject To Arrest.**

The Federal Rules of Evidence provide "permitted uses" of evidence for proving knowledge and other purposes. FRE 404(b)(2). Evidence may also be proffered to provide "notice in a criminal case" when intended to offer at trial if given the defendant a fair opportunity to review and prepare for its introduction. FRE 404(b)(3). The United States does not intend to show Defendant's prior presence at the ICE facility as an acting in conformity but instead to establish Defendant had notice and knowledge of the federal property and that the area in question was not open to the public.

On June 17, 2025, Defendant was cited for Failure to Comply. This incident and citation establishes three key pieces of information. First, it establishes that Defendant knew on July 16, 2025, that he was on federal property. Second, it establishes that Defendant understood he was not allowed to be in that particular area of federal property at that time. Finally, it would provide evidence that Defendant knew he would be subject to arrest if he did not leave the area after being warned. Therefore, the evidence of Defendant's prior presence at the ICE facility should be admitted because it will be made for the purposes of knowledge and notice not for establishing conformity.

**IV.** **The Court Should Permit Federal Agents to Testify Regarding The 4310 S. Macadam Property To Be Designated As Federal Property Or Take Judicial Notice.**

    **a.** **Any federal agent with personal knowledge may to establish the property is federally occupied.**

"Federal property includes any building, land, or other real property owned, leased, or *occupied* by any department, agency, or instrumentality of the United States." *Moore v. United*

*States*, 254 F. App'x 603, 603 (9th Cir. 2007) (citing 20 U.S.C. § 107e(3) and 34 C.F.R. § 395.1(g)) (emphasis added); 40 U.S.C. § 1315(c)(1) (authorizing the regulation at issue here "for the protection and administration of property owned or *occupied* by the Federal Government" (emphasis added)); *Id.* at (b)(2) (authorizing designated officers to investigate offenses committed against property "owned or *occupied* by the Federal Government" (emphasis added)). Defendant claims that "[t]he Government has not at this time indicated that they intend to call any witness who has personal knowledge that the property located at 4310 S. Macadam Avenue was federal property on June 17, 2025, and July 16, 2025." ECF 10 at 5. However, the United States anticipates *several* agents who will testify, through their personal knowledge, that the 4310 S. Macadam Avenue building was occupied by federal agents and was federal property during events in June and July 2025. Additionally, The United States has provided as exhibits official maps of the building which were certified and self-authenticated by the City of Portland. The demarcation between federal property and the public sidewalk is indicated by this map and can be articulated further by testifying officers at trial. Additionally, these documents would be considered public documents that are self-authenticating. FRE 902(4)(a). Therefore, there is no indication that the federal building cannot be established through federal agent testimony, and this testimony should be permitted to be established.

     **b.  The Court can take Judicial Notice of the ICE Facility being a federal building.**

While not conclusive in a criminal case, courts are permitted to take judicial notice of a fact reasonably known and "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b)/(d). The Macadam Building has been known both locally and

nationally as the "Portland ICE Facility" which houses several federal law enforcement divisions.[1] Additionally, in *United States v. Cruscial*, the District Court noted that "[t]he federal government leases a privately-owned building located at 4310 S.W. Macadam Avenue, Portland, Oregon ("Macadam Building"). More than 150 federal employees and contractors work at the Macadam Building for several federal agencies, including certain divisions of Immigration and Customs Enforcement." No. 3:18-cr-00465-JR, 2019 WL 1087150, at *1 (D. Or. Mar. 7, 2019). Finally, briefings and orders submitted by both parties and the court have referenced the property as the "ICE facility" throughout the course of this case. The United States would therefore request that the Court take judicial notice that the Macadam Building is federal property.

V. **The Court should not exclude the LRAD Recordings because they do not violate neither the Best Evidence Rule nor the Confrontation Clause.**

a. **The LRAD Recording Do not Violate the Best Evidence Rule.**

Officers will testify as to the contents of the LRAD and how the LRAD was played during both dates of the incidents. The audio LRAD reads as follows:

> *This is the Federal Protective Service. This facility is closed and not open to the public. Stay out of the area of the driveway to allow for vehicular traffic. Remain on the sidewalk or across the street. Anyone, to include the press, trespassing on federal property is subject to arrest.*

This recording does not violate the best evidence rule, which requires the admission of an "original" recording to prove its content. FRE 1002. Duplicates of the original, however, are admissible "to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FRE 1003. The United States anticipates the evidence will show that the LRAD recording is a duplicate of

---

[1] The facility even has its own Wikipedia page:
https://en.wikipedia.org/wiki/Portland_ICE_facility

**Government's Response** **Page 6**

the original LRAD recording generally used by law enforcement at the ICE building in June and July of 2025. This foundation will be laid through testimony of law enforcement officers who were present at the incidents in question or who were aware of the procedures employed in June and July of 2025.

Even if, as the defense posits, this duplicate was created on June 21, 2025, or in May 2026, that does not raise a genuine question about the original's authenticity. Duplicates of an original recording can be created days, weeks, months, or even years after the original is recorded. Simply put, a later-created duplicate does not violate the Best Evidence Rule.

The defense also argues that the Government has failed to demonstrate that original recordings of the LRAD Announcements made on June 17, 2025, and July 16, 2025, were either destroyed or do not exist within their possession. But the Best Evidence Rule does not require such destruction or non-existence to permit that a duplicate be used.

   b.  **The LRAD Recording Is a Command and not Susceptible to the Confrontation Clause.**

As the defense points out, the Confrontation Clause only prohibits the admission of "testimonial hearsay." But the LRAD recording is neither testimonial nor hearsay. A statement is testimonial when it is either "functionally identical to live, in-court testimony" or was made with the "primary purpose of assisting in [the defendant's] prosecution," *Lucero v. Holland*, 902 F.3d 979, 989 (9th Cir. 2018) (quoting *Ohio v. Clark*, 576 U.S. 237, 240 (2015) and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–11 (2009)).

The LRAD recording here is nothing like in-court testimony and was not made with the primary purpose of assisting prosecution. Rather, it is an order made by law enforcement, in the field, to protect a federal building and provide warnings to citizens. This is not testimonial.

The recording is also not hearsay because it is a command, which "is not an assertion of fact and is not hearsay." *Clark v. Farr*, No. 2:22-CV-294-SI, 2024 WL 4652129, at *4 (D. Or. Nov. 1, 2024) (citing *United States v. Garza*, 2024 WL 4216952, at *19 (E.D. Cal. Sept. 17, 2024) and *State v. Aragon*, 512 P.2d 974, 976 (N.M. App. 1973)).

As such, admission of the LRAD recording is not precluded by any hearsay rule, nor by the Confrontation Clause.

### VI. The Court Should Permit the LRAD Log And Allow Federal Officers To Testify Regarding Its Content And Purpose Under Several Hearsay Exceptions And Exemptions.

The United States plans on presenting as evidence a digital log ("Log") which automatically catalogs communications from federal agents during the incidents in question. This log is taken from the Denver MegaCenter in Colorado, a Federal Protective Service facility which is responsible for monitoring wireless dispatch communication for federal facilities across the United States, including Oregon.[2]

Even assuming, arguendo, the LRAD logs are hearsay, they fall under multiple hearsay exceptions. The Log should be permitted as a present sense impression, Fed. R. Evid. 803(1), memorialized in record of regularly conducted activity, Fed. R. Evid. 803(6). Finally, the log is regularly recorded and digitized and therefore qualifies under the Government records exception as well. FRE 803(8). Therefore, the rule against hearsay does not preclude admission of LRAD log as evidence at trial and should be permitted to introduced into evidence.

///

///

---

[2] https://www.dhs.gov/megacenters

**Government's Response**                                                                 **Page 8**

**VII.**     **No Confrontation Clause Issue arises from the introduction of any evidence being proffered by the United States in this case.**

Defense alleges that allowing the LRAD audio or the LRAD logs would violate the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. Defense claims that the United States is going to use a "mouthpiece" to act as a general catch-all testifier to introduce all exhibits and evidence in the upcoming trial. This allegation is based off a citation to *Smith. v. Arizona*. As Justice Kagan succinctly states, the "[Confrontation] Clause protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 784, 144 S. Ct. 1785, 1791, 219 L. Ed. 2d 420 (2024). *Smith* dealt with the issue of non-involved and separate laboratory analysts testifying about a drug analysis report created by an analyst directly involved in the underlying report. *Id.* The Court found this method inappropriate as the testifying analyst was not involved in the original process and was essentially acting as a "mouthpiece" from the original analyst. *Id.* at 1801.

Here, the government intends to introduce as witnesses some of the federal officers that recorded the LRAD audio and engaged with the facility that produced the Logs. Unlike *Smith*, these officers were directly involved in both the June and July events and contributed to the material to be relied upon. There will be no "mouthpieces" but direct testimony from the individuals involved in the incidents taken from their personal knowledge. As such, the defendant will be able to cross-examine the officers during the trial. Therefore, there is no confrontation clause issue regarding the LRAD recording and its log which would prevent their introduction into evidence at trial.

**Government's Response**                                                              **Page 9**

## CONCLUSION

For the foregoing reasons, the government requests the Court deny Defendant's Motion in

Limine.  Dated: June 15, 2026,                Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Cameron Perla*
CAMERON PERLA, OSB #241820
Assistant United States Attorney